IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DALE CLINTON THOMPSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 7:13-CV-491** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commisioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Dale Clinton Thompson ("Thompson") filed this action challenging the final

decision of the Commissioner of Social Security ("Commissioner") determining that he was not

disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social

Security Act ("Act"). 42 U.S.C. §§ 401–433. Thompson raises multiple arguments in his brief,

challenging various aspects of the decision of the Administrative Law Judge ("ALJ"), each of

which I discuss below.  I conclude that substantial evidence supports the Commissioner's

decision. Accordingly, I hereby **DENY** Thompson's Motion for Summary Judgment (Dkt. No.

19), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 21.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Thompson failed to demonstrate that he was

disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability

1

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Thompson filed for DIB on May 20, 2010, claiming that his disability began on April 29, 2010. R. 166–67. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 78–106. On May 18, 2012, ALJ Benjamin R. McMillion held a hearing to consider Thompson's disability claim. R. 29–66. Thompson was represented by an attorney at the hearing, which included testimony from vocational expert Ashley Wells. Id.

On June 4, 2012, the ALJ entered his decision analyzing Thompson's claim under the familiar five-step process[3] and denying Thompson's claim for benefits. R. 15–24. The ALJ found that Thompson suffered from the severe impairments of chronic back pain due to neurogenic claudication and bilateral radiculopathy, status post 3 surgeries; lumbar degenerative disc disease; and opioid dependence. R. 17. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. Id. The ALJ

under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

further found that Thompson retained the RFC to perform light work with occasional balancing, stooping and crouching, and can never climb, kneel or crawl.[4] R. 18. The ALJ found that Thompson should avoid moderate exposure to hazards, and is limited to simple job instructions due to the side effects of his pain medications. Id. The ALJ determined that Thompson could not return to his past relevant work as a teacher (R. 22), but that Thompson could work at jobs that exist in significant numbers in the national economy, such as housekeeper, assembler, cafeteria attendant, information clerk, addressing clerk, and surveillance monitor. R. 23. Thus, the ALJ concluded that Thompson was not disabled. Id. On August 16, 2013, the Appeals Council denied Thompson's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Thompson asserts that the ALJ erred by failing to find that his back pain qualifies for a listing, and improperly analyzing and weighing the physicians' opinions and other evidence in the record.

### Listing § 1.04

Thompson argues that the ALJ erred by finding that his impairments did not meet listing §1.04 for spine disorders. In support of this argument, Thompson summarily states that his severe spinal impairments lasted longer than 12 months and medically equal the requirements of listing § 1.04. Pl. Br. Summ. J. p. 7.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of

---

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)). It is well settled that Thompson must establish that he meets all of the requirements of a listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Listing § 1.04 covers disorders of the spine resulting in compromise of a nerve root or the spinal cord with: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or…(C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively as defined in 1.00B2b.[5]

The ALJ determined that Thompson's spine disorders did not meet a listing because the evidence established that he is able to ambulate without assistance and can perform manipulative operations adequately. R. 17.  The ALJ's decision is supported by substantial evidence in the record. The plain language of listing § 1.04(A) requires claimants to meet all elements listed including evidence of limitation of motion of the spine, motor loss, sensory or reflex loss and a positive straight-leg raising test. Reynolds v. Astrue, No. SKG-11-559, 2012 WL 1107649, at *17 (D. Md. March 30, 2012). The evidence does not reflect that Thompson suffered from motor, sensory or reflex loss, as required by listing § 1.04(A). See, e.g., R. 316, 347, 379.

---

[5] There is no suggestion in the record that Thompson suffers from the category B criteria relating to spinal arachnoiditis, thus, I will focus my analysis on the category A and C criteria of listing § 1.04.

4

With regard to listing 1.04(C), the "inability to ambulate effectively" is defined as an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.00(B)(2)(b)(l). This generally means that a claimant is unable to independently ambulate without the use of assistive devices. Id.  There is no evidence in the record that Thompson uses an assistive device, such as a walker, crutches or cane while walking; that he cannot walk at a reasonable pace for at least 15 minutes; or that he cannot ambulate sufficiently to perform his daily activities. Indeed, Thompson testified at the administrative hearing that he can walk for five minutes at a time. R. 50.  Additionally, Thompson reported the ability to perform daily activities such as preparing simple meals, counting change, swimming at the YMCA, and going grocery shopping—things that a listing level spine disorder impairment would preclude. R. 40, 54, 55, 206, 207. Thus, the ALJ's conclusion that Thompson's impairments did not meet or equal a spine disorder listing is supported by substantial evidence in the record.

**RFC**

Thompson also argues that the ALJ erred by concluding that he can perform a limited range of light work.  Specifically, Thompson claims that the ALJ failed to properly explain his decision, erroneously dismissed all of the evidence favorable to Thompson in the record, mischaracterized the assessments of non-treating physicians and did not point to any physician in the record who concluded that Thompson can perform light work. Pl. Br. Summ. J. p. 9–11. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision denying Thompson's claims.

Thompson suffers from spinal stenosis with neurogenic claudication (leg pain or numbness) and bilateral lower extremity radiculopathy. Thompson underwent a bilateral L5/S1

5

lumbar laminectomy and foraminotomy in November 2009. R. 269–73. Thompson recovered well from the surgery until he fell and aggravated his back condition in February 2010. R. 308. Thompson's surgeon, Raymond V. Harron, D.O., performed a lumbar fusion at L5-S1 on April 29, 2010. R. 289–95.

On June 28, 2010, about six weeks after his surgery, William Humphries, M.D., performed a consultative examination of Thompson. R. 314–17. Dr. Humphries concluded that Thompson is capable of sitting 6 hours in an 8 hour workday; standing and walking 2 hours in an 8 hour workday; lifting 25 pounds occasionally and 10 pounds frequently; occasional stooping and crouching; and never climbing, kneeling or crawling. R. 317.

On June 30, 2010, state agency physician Robert McGuffin, M.D., reviewed Thompson's records and concluded that he is capable of lifting 20 pounds occasionally, 10 pounds frequently; standing and walking 2 hours in an 8 hour day; sitting 6 hours in an 8 hour day; occasionally climbing ramps, and stairs, balancing, stooping, and crouching, and never crawling, kneeling or climbing ladders, ropes or scaffolds. R. 83–84. On December 28, 2010, state agency physician Donald Williams, M.D., reviewed the record and found identical limitations to those determined by Dr. McGuffin. R. 93–94.

Thompson was referred for a functional capacity evaluation, and on July 11, 2011, physical therapist Thomas Ellexson tested Thompson's maximum capacity for work. R. 365–66. Ellexson reported that Thompson gave good consistent effort throughout the exam but has a very high perceived level of pain and dysfunction. He refused to sit throughout the test and leaned forward with his upper body weight supported on tables and chairs. The tests indicated a probable emotional/behavioral component to Thompson's pain. Ellexson determined that Thompson has a lifting restriction of 8 pounds to shoulder level with limited reaching and no overhead reaching or lifting, and needs to be able to change positions as necessary throughout

6

the day.  Ellexson concluded that Thompson would benefit from continued pain management including psychological counseling for his high level of pain and dysfunction. R. 366.

Thompson obtained a second opinion on his back pain from Mark Shaffrey, M.D. on July 4, 2011, who noted that Thompson's studies demonstrated a psuedoarthrosis. R. 390. On examination, Thompson's back was diffusely tender to palpation, with evidence of paraspinous muscle spasm.  His extremities were non-tender, with full strength and normal sensation.  His gait was severely antalgic.  Dr. Shaffrey offered Thompson an L5-S1 posterior segmental instrumentation with posterior lateral fusion, but predicted only a 50–60% chance of significant pain improvement. Id.

On August 20, 2011, Dr. Shaffrey performed the L5-S1 bilateral medial facetectomy, posterior segmental interbody fusion and posterolateral fusion on Thompson. R. 382–85.  Dr. Shaffrey also completed a long-term disability form for Thompson indicating that he expected to release Thompson to return to work in December 2011. R. 405.

Thompson steadily improved after his third surgery, and on October 12, 2011, reported a slight increase in his activities, and the ability to sit for longer periods of time. R. 347.  His pain management doctor, George Baylor, M.D., noted some muscle spasms, a nonantalgic gait, and recommended continued medications and physical therapy.  Dr. Baylor also stated that he filled out disability paperwork for Thompson, but stated, "I think vocational rehabilitation and returning to the work force would be really important for his overall health and well being and we will assist him with that after, but he will need short-term disability through social security and hopefully we can do this in the future." Id.  Dr. Baylor also completed a "Physical Capacities" form for Thompson, indicating that he could stand, walk and sit for 15 minutes at a time, and for one hour total during a workday; lift and carry 10 pounds occasionally; would have frequent interruptions in concentration due to pain; would be unable to work some days due to

7

exacerbation of pain; and would need opportunities during an 8 hour workday to lie down and rest. R. 348.

On November 14, 2011, Thompson followed up with Dr. Shaffrey and reported that his back pain has improved and he can sit for one hour per day. His spine was minimally tender to palpation and there was mild evidence of paraspinous muscle spasm, he had full strength and a mildly antalgic gait. Dr. Shaffrey was pleased with Thompson's progress and noted that he is limited to lifting no greater than 25 pounds. R. 379.

On February 20, 2012, Thompson visited Dr. Shaffrey and reported improved back pain and the ability to sit 30 minutes per day. R. 377. On examination, Thompson's spine was minimally tender to palpation, he had no evidence of muscle spasm, his extremities were non-tender, he had full strength, and antalgic gait. Dr. Shaffrey stated he was pleased that Thompson was doing so well post-fusion and he was encouraged to continue with his home exercise program. Dr. Shaffrey noted that Thompson will not be at maximum medical improvement for a least a year after his surgery. Id.

On March 19, 2012, Dr. Baylor completed a second questionnaire, concluding that Thompson can sit and stand for 10 minutes at a time and a total of one hour a day; will need unscheduled breaks during an 8 hour workday; would be absent from work more than 4 times per month; and his effectiveness would be severely limited due to drowsiness. R. 413–14.

When determining Thompson's RFC, the ALJ gave limited weight to the restrictions suggested by the state agency reviewing physicians and Dr. Humphries because they were provided shortly after Thompson's second back surgery and prior to his third surgery. R. 22. The ALJ also gave limited weight to Ellexson's functional capacity evaluation, noting that the tests indicated an emotional/behavioral component to Thompson's pain. The ALJ gave some weight to the physical capacities form completed by Dr. Baylor on October 12, 2011, finding that

8

vocational rehabilitation and return to the work force would benefit Thompson's overall health. The ALJ gave little weight to Dr. Baylor's opinion that Thompson is unable to work at even less than sedentary jobs, finding it unsupported by objective or clinical findings. The ALJ gave great weight to the opinion of Dr. Shaffrey that Thompson could return to full time work in December 2011 after his August 2011 surgery. R. 22.

The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. 20 C.F.R. §§ 404.1545, 404.1546. An ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Here, the ALJ considered all of the evidence in the record and assigned specific weight to each of the medical opinions. The ALJ also considered Thompson's own reports of his activities and the treatment notes from his providers. The RFC determined by the ALJ in this case takes into account all of the evidence cited in the decision.

The ALJ found that the objective findings and progress notes of Thompson's treating physicians do not support his allegations regarding the severity of his functional limitations. R. 21. The ALJ noted that Thompson was described as doing well after his third surgery, was advised to exercise and had no significant muscle spasms. R. 22. Dr. Shaffrey's treatment notes after Thompson's third operation reflect that he was improving and the amount he could sit without pain was increasing. On exam, he had minimal tenderness to palpation, either mild evidence of muscle spasm or no muscle spasm, full strength and a mildly antalgic gait. Dr. Shaffrey found Thompson capable of lifting up to 25 pounds, and indicated that he expected Thompson to be released to return to work full-time by December 16, 2011. R. 377, 379.

9

The ALJ accounted for the limitations posed by Thompson's impairments by limiting him to a range of light work. The ALJ also restricted Thompson's ability to balance, stoop, crouch, climb, kneel, crawl, and be exposed to workplace hazards. R. 18. Accordingly, the ALJ's RFC analysis is consistent with the medical evidence of record and rests on a sufficient evidentiary basis.[6]

Thompson also asserts that the ALJ's hypothetical to the vocational expert did not include all of the necessary limitations, because it was based upon his "erroneous" RFC. Pl. Br. Summ. J. p. 11–12. The ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999) (citing Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986)). Essentially, Thompson posits that the hypothetical, which was premised on the RFC assessment, was deficient because he believes that the RFC assessment was deficient. As discussed above, the ALJ provided substantial evidence to reject some of the more severe limitations suggested in physicians' opinions and to support the restrictions included in the RFC assessment.

Overall, Thompson's arguments essentially ask the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the

---

[6] Thompson also argues that the ALJ erroneously interpreted the state agency opinions as recommending light work, asserting that they instead find Thompson capable of sedentary work. Pl. Br. Summ. J. p. 10. Both of the state agency opinions set forth recommended restrictions that fall within the range of light work (R. 83–84, 93–94) (see 20 C.F.R. § 404.1567(b)); however, the disability determinations list Thompson's maximum sustained work capability as "sedentary." R. 85, 95. The ALJ properly recounted the state agency physicians' opinions in his determination and gave them limited weight. R. 20. There is no indication that he erred in his analysis of their conclusions. Additionally, any argument by Thompson that he should've been limited to sedentary work would not require a remand in this case, as the vocational expert specifically identified both light and sedentary jobs available in the national economy that Thompson could perform. R. 60.

10

evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. Here, the ALJ does not assert that Thompson is pain free. On the contrary, the ALJ recognized that Thompson suffers from severe conditions that greatly limit his ability to function. The issue, however, is not whether Thompson has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the limited range of light jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457–58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's determination that Thompson is capable of a limited range of light work.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED** and Thompson's motion for summary judgment is **DENIED**.

Enter:  September 28, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

11